

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

April 20, 1959

Honorable Jimmy Morris
County Attorney
Navarro County
Corsicana, Texas

Opinion No. WW-595

Re: Whether Navarro County can
spend tax money to maintain
dams constructed in Navarro
County by the Navarro-Hill
Soil Conservation District.

Dear Mr. Morris:

Your request for an opinion from this office and subsequent corres-
pondence presented facts which are essentially as follows:

The Navarro-Hill Soil Conservation District has se-
cured easements upon land in Navarro County owned by
private individuals. These easements authorize the
District to install, operate, maintain, and control dams
and other reservoir works and measures thereunder. Each
easement states that it is secured in a program of
"planning and installing works and measures for water-
shed protection, flood prevention, and agricultural
phases of the conservation, development, utilization and
disposal of water". The District has constructed several
dams in Navarro County and has asked Navarro County to
assume the maintenance of these dams and all other dams
which may be constructed in the future. The estimated
average cost of maintaining each dam is $100.00 per year.
Navarro County has no special fund set up for such main-
tenance and has held no election to provide such a fund.
The holders of the title to the land on which water is
contained by these dams are selling to other persons
fishing rights and the water.

Your request for an opinion is substantially as follows:

Can Navarro County spend tax money to maintain the
dams constructed in Navarro County by the Navarro-Hill
Soil Conservation District?

Certain Constitutional and statutory provisions, which otherwise
might be related to the consideration of this question as authorization for
certain acts, are inapplicable under the facts presented. Among such provi-
sions are Section 52 of Article III and Section 59 of Article XVI of the
Texas Constitution and Articles 7808 and 7800-1, Vernon's Annotated Texas

Statutes.

The Constitutional and statutory provisions which may authorize Navarro County to engage in flood control projects, including the financing of such projects, are codified as Section 1a of Article VIII of the Texas Constitution and Articles 7048a, 7048b, and 1581e, Vernon's Annotated Texas Statutes.

Section 1a of Article VIII terminated the levying of a state ad valorem tax for general revenue purposes subject to certain exceptions and authorized counties to levy ad valorem taxes for certain county purposes, including flood control.

Article 7048a was adopted by the Legislature as an enabling act to authorize the levying, assessing, and collecting of taxes by counties under Section 1a of Article VIII. Section 7 of Article 7048a required approval of county ad valorem taxes in an election before the county could exercise such authority. Since no election has been held on this question in Navarro County, this county ad valorem tax cannot be levied.

However, Article 7048a also contains provisions for the continued levying, assessing, and collecting of the state ad valorem tax in those counties and political subdivisions from which tax donations have been granted for a period of time which has not terminated. As amended in 1951, Section 10(a)(4) of Article 7048a provides that, of such money collected, any excess after existing legal obligations are discharged shall be paid to the county and used for either the construction and maintenance of farm-to-market roads or for flood control.

Further, Article 7048b, as amended in 1955, provides in part as follows:

"The Commissioners Court of any county in the State may enter into contracts for the accomplishment of plans and programs for flood control and soil conservation with . . . State Soil Conservation Districts . . . as provided in Section 5 of Chapter 464 of the Acts of the Fifty-first Legislature, 1949 /Article 7048a/, and the responsibility for carrying out such plans and the expenditure of funds of the county and such . . . districts . . . may by such agreement be divided between the parties or delegated to either the county or to one or more of said . . . districts . . .".

These Constitutional and statutory provisions would authorize Navarro County to contract with the Navarro-Hill Soil Conservation District in a flood control program if funds are available to Navarro County under Section 10(a)(4) of Article 7048a and the particular agreement is not otherwise prohibited.

Similar authorization to contract with other governmental units is included in Article 1581e, which declares that counties shall have the right of eminent domain to condemn and acquire real property and easements and right-of-ways for flood control purposes.

In San Antonio River Authority vs. Sheppard, 299 S.W.2d 920, a flood control program contract executed between Bexar County and another governmental unit was attacked on the ground, among others, that the contract violated Section 52 of Article III which prohibits a county lending its credit or granting money in aid of or to any individual, association, or corporation. The Supreme Court denied this contention and held the contract involved valid, saying in part:

"In the instant case the San Antonio River Authority has contracted to construct according to agreed plans specific flood control facilities and Bexar County has agreed to pay therefor. No loan of credit or grant of public moneys is involved. Both parties are obligated in a quid pro quo contract. Articles 7048a and 7048b authorize the Commissioners Court of Bexar County to contract with the District, and not to grant money to the District. Such contract does not constitute an unconstitutional pledge of credit or grant of public money by Bexar County".

The fact situation on which this opinion is based seems to be sufficiently similar for the same rule to be applied. A contract is defined in Texas Jurisprudence, Vol. 10-A, Section 3, as a deliberate or voluntary engagement between competent parties, upon a legal consideration, to do or not to do some act. The consideration flowing from the District in this instance is a flood control program, including dams and related works and the easements under which such were constructed and are held. The consideration flowing from the County is the maintaining each of these flood control works at an estimated cost of $100 per year. Therefore, the holding of the Supreme Court would seem to be equally applicable to this situation.

With regard to the actions of the land owners in selling water and fishing rights to others, these actions are not determinative of the public or private nature of the use of funds under the contemplated contract. Each of the Constitutional and statutory provisions cited in this opinion as authorization for the contemplated contract has flood control as an objective, as does the program in which easements are secured and dams constructed by the District. The use of public funds for a flood control program is accepted as permissible and proper, and this would be true of such use in this situation.

If the dams involved are constructed across either navigable or non-navigable streams and are not designed merely to impound diffused surface water, the actions of the land owners in selling water, except when based

upon permits or certified filings, and fishing rights, except those dealing with access across the vendor's land, would not be authorized under the laws of this State. See Attorney General's Opinion No. WW-97, a copy of which is enclosed, which contains a discussion concerning rights in particular water, and see Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W.2d 441, which contains holdings concerning fishing rights similar to those involved in this fact situation.

Thus, in answer to your question and based on the facts presented, Navarro County can spend tax money to maintain dams constructed in Navarro County by the Navarro-Hill Soil Conservation District if such money is available to Navarro County under Section 10(a)(4) of Article 7048a.

SUMMARY

> Navarro County can spend tax money to maintain dams constructed in Navarro County by the Navarro-Hill Soil Conservation District under certain provisions of Articles 7048a and 7048b if such money is available to Navarro County under Section 10(a)(4) of Article 7048a.

Very truly yours,

WILL WILSON
Attorney General of Texas

By: Charles D. Cabaniss
Assistant

CDC:aw

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

Jot Hodges, Jr.
Thomas Burrus
Houghton Brownlee, Jr.
Lawrence Jones

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert